## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN McKEOWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-301-PRW |
| | ) | |
| PAYCOM PAYROLL LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

*s/ Alyssa N. Lankford*
Philip R. Bruce, OBA #30504
Alyssa N. Lankford, OBA #33944
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
Eighth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
philip.bruce@mcafeetaft.com
alyssa.lankford@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

April 2, 2024

## TABLE OF CONTENTS

FACTUAL BACKGROUND ...................................................................................... 1

MOTION TO DISMISS STANDARD.................................................................... 4

ARGUMENTS AND AUTHORITIES ..................................................................... 5

      I.      Plaintiff's Complaint contains no factual allegations to support a Title VII sex discrimination claim. ................................................................... 5

      II.    Plaintiff's Complaint is bereft of allegations regarding age discrimination. .................................................................................... 8

      III.   Plaintiff failed to plead any connection between alleged protected activity and Paycom rescinding her conditional job offer.................... 10

      IV.   Plaintiff has not alleged that she is disabled, nor that Paycom "regarded [her] as" disabled. ................................................................................ 14

      V.    Paycom complied with the Fair Credit Reporting Act. ........................ 18

CONCLUSION ....................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Aramburu v. Boeing, Co.*,
    112 F.3d 1398 (10th Cir. 1997) ................................................................. 10

*Betchan v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*,
    No. CIV-20-128-G, 2020 WL 7033989 (W.D. Okla. Nov. 30, 2020)........................ 18

*Brown v. McDonough*,
    CIV-21-763-G, 2022 WL 4773569 (W.D. Okla. Sept. 30, 2022) ................................ 9

*Conner v. Okla.*,
    CIV-22-1095-G, 2023 WL 6380018, at *2-4 (W.D. Okla. Sept. 29,
    2023) ........................................................................................... 7, 13

*Dees v. Dobson Tech.*,
    CIV-19-0915-F, 2021 WL 27476 (W.D. Okla. Jan. 4, 2021)..................................... 15

*Green v. Crest Discount Foods, Inc.*,
    CIV-19-00724-PRW, 2020 WL 5920270 (W.D. Okla. Oct. 6, 2020)........................ 14

*Haworth v. Tronox, LLC*,
    CIV-22-00606-PRW, 2023 WL 6276711 (W.D. Okla. Sept. 26, 2023) .................... 12

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ......................................................... 5, 11, 14

*Mitchell v. Nat'l R.R. Passenger Corp.*,
    407 F.Supp.2d 213 (D.C.C. 2005) .............................................................. 10

*Nguyen v. DeJoy*,
    CIV-22-1102-D, 2024 WL 1018546 (W.D. Okla. Mar. 8, 2024)............................. 5, 6

*Payne v. WS Servs., LLC*,
    216 F. Supp. 3d 1304 (W.D. Okla. Oct. 25, 2016) ................................. 11, 12

*Phillips v. Martin-Marietta Corp.*,
    91 S. Ct. 496, 400 U.S. 542, 27 L.Ed.2d 613 (1971)..................................... 8

*Russell v. Phillips 66 Co.*,
    184 F. Supp. 3d 1258 (N.D. Okla. 2016), *aff'd*, 687 F. App'x 748 (10th
    Cir. 2017) ......................................................................................... 17

*Smith v. McDonough*,
   CIV-21-737-F, 2021 WL 5999601 (W.D. Okla. Dec. 20, 2021)...............................6, 7

*Somoza v. Univ. of Denver*,
   513 F.3d 1206 (10th Cir. 2008) ....................................................................... 11

*Thomas v. Wal-Mart Assocs.*,
   CIV-21-94-G, 2023 WL 6380002 (W.D. Okla. Sept. 29, 2023) ........................*passim*

*Vaughn v. Epworth Villa*,
   537 F.3d 1147 (10th Cir. 2008) ....................................................................... 11

*Williams v. Defender Servs., Inc.*,
   CIV-10-209-M, 2011 WL 489791 (W.D. Okla. Feb. 7, 2011)...............................9, 16

**Statutes**

15 U.S.C. § 1681 ..............................................................................18, 20, 21

42 U.S.C. § 2000e-2(a)(1) ..................................................................................7

42 U.S.C. § 12102(1)....................................................................................14, 15

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ..............................................................4

Federal Rule of Civil Procedure 10(c)................................................................1

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Paycom Payroll LLC ("Defendant" or "Paycom") hereby moves the Court to dismiss all claims in Plaintiff Carolyn McKeown's ("Plaintiff") Complaint.[1] In support of its Motion, Paycom submits the following brief.

## FACTUAL BACKGROUND

1.      Plaintiff applied for the role of New Client Support Specialist ("NCS Specialist") with Paycom on August 19, 2023. Doc. No. 1-1, at ¶ 3; Doc. No. 1-1, Ex. M, at 42 (Paycom's Position Statement).[2]

2.      On August 25, 2023, Paycom provided Plaintiff with a conditional job offer for the NCS Specialist role, which was "contingent upon the successful completion of a reference check, background, and MVR check, drug screen, credit check and review panel's consideration of the foregoing." Doc. No. 1-1, at ¶ 4; Doc. No. 1-1, Ex. A.2 (Conditional Offer).

3.      That same day, Plaintiff executed an Authorization Form that authorized Paycom to obtain "consumer reports" and "investigative consumer reports," and provided Plaintiff with a summary of her rights under the Fair Credit Reporting Act ("FCRA"). Ex. 1, Plaintiff's Authorization Form.[3] The executed Authorization Form expressly stated that

---

[1] Plaintiff filed her Complaint in the District Court for Oklahoma County on February 20, 2024. Doc. No. 1-1. For purposes of this Motion, Paycom will refer to Plaintiff's Complaint as her "Complaint."

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

[3] "Although the sufficiency of a complaint [generally] must rest on its contents alone[,] … [t]here are exceptions to this restriction on what the court can consider in ruling on a Rule 12(b)(6) motion. These exceptions are limited to (1) documents that the complaint

Plaintiff "acknowledge[d] receipt of the following separate documents (and [certified] that [she had] read and understood them)": "DISCLOSURE REGARDING BACKGROUND INVESTIGATION ON YOU; A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT; ADDITIONAL NOTICE REGARDING INVESTIGATIVE CONSUMER REPORTS ON YOU; ADDITIONAL STATE LAW NOTICES." Ex. 1, at 7.

4.     From the outset of its communications with Plaintiff, Paycom clearly and consistently communicated about the position's non-negotiable compensation structure. However, when Paycom extended the verbal conditional job offer to Plaintiff, she immediately pushed back on the offered compensation rate. Doc. No. 1-1, Ex. M, at 42.

5.     After Paycom reiterated and confirmed that the NCS Specialist position was entry-level and the compensation was non-negotiable, Plaintiff signed the offer letter with the fixed compensation level. Doc. No. 1-1, Ex. M, at 42; Doc. No. 1-1, at ¶ 3 ("I received a job offer on August 25, 2023, which I accepted in writing[.]").

---

incorporates by reference, (2) documents referred to in the complaint if the documents are central to the [party's] claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Viviani v. Coffey & Assocs., Inc.*, CIV-22-00090-PRW, 2023 WL 2432026, at *6 (W.D. Okla. Mar. 9, 2023). Because Plaintiff's Authorization Form is central to her FCRA claim, the Court may examine it in ruling on Paycom's Motion under Fed. R. Civ. P. 12(b)(6) without converting such Motion to one for summary judgment. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

6. On August 30, 2023, Paycom contacted Plaintiff to clarify a reference contact. Thereafter, Plaintiff continually asked questions regarding her start date, work hours, and how Paycom handles employees seeking supplemental employment. Doc. No. 1-1, Ex. M, at 42. Plaintiff asked to speak with someone in management regarding, among other things, her compensation, and was continually disrespectful to Paycom employees with whom she spoke. *Id.*

7. In a call with a Paycom employee to address Plaintiff's questions, Plaintiff continued to be combative, disrespectful, and belligerent in her ongoing demand for higher compensation. Doc. No. 1-1, Ex. M, at 42. Paycom maintained its position that the pay for the offered role was non-negotiable. *Id.*

8. Based on Plaintiff's behavior and interactions with Paycom during this timeframe, Paycom rescinded Plaintiff's job offer on September 5, 2023. Doc. No. 1-1, Ex. M, at 2-3; Doc. No. 1-1, at ¶ 8 ("On September 5, 2023, I received an email from Ms. Catalina Keo rescinding the job offer.").

9. On September 6, 2023, Plaintiff filed an EEOC Charge of Discrimination ("Charge"), and alleged discrimination based on "sex," "retaliation," and "age." Doc. No. 1-1, at ¶ 9; Doc. No. 1-1, Ex. D.1.

10. On October 18, 2023, Plaintiff amended her Charge to allege discrimination based on "disability." Doc. No. 1-1, at ¶ 9; Doc. No. 1-1, Ex. D.2.

11. On November 20, 2023, the EEOC provided Plaintiff with her Notice of Right to Sue, having made no determination on the merits of Plaintiff's claims. Doc. No. 1-1, Ex. L; Doc. No. 1-1, at ¶ 21.

12.     On February 20, 2024, Plaintiff filed her lawsuit in the District Court of Oklahoma County. Doc. No. 1-1.

13.     On March 26, 2024, Paycom removed the lawsuit to this Court. Doc. No. 1.

## MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court clarified the Rule 8(a)(2) pleading requirements in their decision in *Bell Atlantic Corp. v. Twombly*, stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S.Ct. 1955, 1964-1965, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . .." *Id.*

The Court in *Iqbal* provided further guidance regarding the Rule 8(a)(2) pleading standard, stating that "[t]he plausibility standard is not [akin] to a 'probability requirement,' but [rather] asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, the plaintiff must support her legal conclusions with "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief." *Id.* at 679.

## ARGUMENTS AND AUTHORITIES

### I.  Plaintiff's Complaint contains no factual allegations to support a Title VII sex discrimination claim.

A full review of Plaintiff's Complaint shows that she has not alleged <u>any factual allegations</u> that Paycom engaged in discrimination based on Plaintiff's sex. Because Plaintiff has not alleged any direct evidence of sex-based discrimination, the *McDonnell-Douglas* framework will first require Plaintiff to prove her *prima facie* case of discrimination. *Nguyen v. DeJoy*, CIV-22-1102-D, 2024 WL 1018546, at *3 (W.D. Okla. Mar. 8, 2024) ("Here, Plaintiff's amended complaint contains no evidence of direct discrimination. Accordingly, the plausibility of Plaintiff's claims by examining the first step of the *McDonnell-Douglas* framework[.]") (internal citations and quotation marks omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012). Accordingly, the Court may look to the following elements of Plaintiff's *prima facie* case when assessing whether her sex-based discrimination claim meets the pleading requirements under Federal Rule of Civil Procedure 8(a)(2): "(1) [the plaintiff] belongs to a class protected by Title VII; (2) [the plaintiff] suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Nguyen,* 2024 WL 1018546, at *3.

Plaintiff's Complaint contains no factual allegations to support her *prima facie* case of sex discrimination. The first <u>and only</u> mention of alleged sex-based discrimination in

Plaintiff's Complaint is not found until Plaintiff mentioned that she filed her EEOC Charge on September 6, 2023. Doc. No. 1-1, at ¶ 9. But this is where Plaintiff's allegations about sex-based discrimination end. Plaintiff's Complaint does not contain a cause of action for sex-based discrimination, nor does she seek any remedy for this alleged discrimination. *Id.* at 9 (showing only three claims, none of which include discrimination based on sex, and requested damages for alleged ADAA/ADEA and FCRA violations only).

Even if the Court looked at Plaintiff's EEOC Charge, which Plaintiff attached as an Exhibit to her Complaint, Plaintiff never alleges discrimination based on sex. Doc. No. 1-1, Ex. D.1. Rather, Plaintiff states as follows with respect to Paycom's alleged Title VII violation: "Despite my clear background, driving record, drug screen, and outstanding prior work history, hard earned education and professional industry credentials, I am confident that the decision was based on my age and <u>non-married, childfree status</u>, which is a violation of Title VII . . . and [the ADEA]." *Id.* Plaintiff again referenced her "non-married" and "childfree" status in emails sent to Paycom post-recission of her conditional offer. Doc. No. 1-1, Ex. E. 1.

Plaintiff's Title VII claim cannot survive Defendant's Motion based on these allegations. Plaintiff's general statement that she filed an EEOC Charge based on "sex" does not meet Fed. R. Civ. P. 8(a)(2)'s pleading standard. *See Smith v. McDonough*, CIV-21-737-F, 2021 WL 5999601, at *1 (W.D. Okla. Dec. 20, 2021) ("[G]eneral assertions of discrimination … without any details whatsoever of events … are insufficient to survive a motion to dismiss. While specific facts are not necessary[,][ some facts are.") (cleaned up).

Further, Plaintiff's "non-married, childfree" status does not, on its own, support a sex-based discrimination claim under Title VII. Plaintiff's reference to her marital and parental status serve (at best) as "plus factors," but are not protected characteristics to satisfy the first element of her *prima* facie case of sex discrimination under Title VII. 42 U.S.C. § 2000e-2(a)(1) (making it unlawful to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin").

For example, in *Conner v. Okla.,* the plaintiff asserted a sex-plus-age claim under Title VII. CIV-22-1095-G, 2023 WL 6380018, at *2-4 (W.D. Okla. Sept. 29, 2023). Citing Tenth Circuit precedent in *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020), the *Conner* court reemphasized the following key point about "plus factor" cases:

> [A] sex-plus-age claim alleges discrimination against an employee because of sex and some other characteristic. <u>It is thus a sex discrimination claim,</u> albeit one that alleges that the discrimination was based only in part on sex. <u>Like any other sex-plus plaintiff, a sex-plus-age plaintiff must show unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus'- characteristic.</u>

*Id.* at *2. The *Conner* court held that the plaintiff's Amended Complaint "contain[ed] no specific allegations related to sex or gender bias," and that "[t]he pleading's speculative, conclusory assertions of 'discrimination' and '[t]he real reason' for the termination [were] insufficient to survive a motion to dismiss." *Id.* at *4.

Here, Plaintiff failed to allege any facts showing discrimination based on her sex, and instead seeks to rely solely upon conclusory allegations about what may (at best) be

considered "plus factors" (i.e., marital and parental status).[4] Plaintiff likewise has not alleged discrimination based on her sex-plus-marital or parental status in comparison to an employee of the opposite sex with those plus factors. In sum, Plaintiff cannot rely solely upon her conclusory allegations regarding her "non-married, childfree" status, on their own, to support her Title VII claim. *See Thomas v. Wal-Mart Assocs.*, CIV-21-94-G, 2023 WL 6380002, at *3 (W.D. Okla. Sept. 29, 2023) ("Plaintiff's single statement that her gender plus age was a significant factor in the decision to terminate her is the kind of general and conclusory assertion of discrimination that precedent instructs us is insufficient to survive a motion to dismiss.").

For these reasons, the Court should grant Defendant's Motion and dismiss Plaintiff's Title VII claim for sex discrimination with prejudice.

## II.    <u>Plaintiff's Complaint is bereft of allegations regarding age discrimination.</u>

Plaintiff Complaint contains no factual allegations that entitle her to survive Defendant's Motion on her age discrimination claim. Because Plaintiff has provided no direct evidence of age discrimination, the Court can assess the following elements of Plaintiff's *prima facie* case of age discrimination to determine whether she sufficiently pled factual allegations to support this claim: "(1) [Plaintiff] is a member of the class protected

---

[4] Paycom also notes that case law addressing marital status or parental status as "plus" factors for Title VII discrimination claims have traditionally concerned opposite facts than those alleged by Plaintiff in this case. For example, cases addressing claims of sex discrimination under Title VII with a plus factor relating to parental status have focused on employer policies that prohibit hiring of women <u>with children</u>, rather than "childfree" women. *See, e.g., Phillips v. Martin-Marietta Corp.*, 91 S. Ct. 496, 400 U.S. 542, 27 L.Ed.2d 613 (1971) (finding that employer's policy against hiring women with pre-school-age children, while hiring men with children that same age, violated Title VII).

by the ADEA; (2) [Plaintiff] suffered an adverse employment action; (3) [Plaintiff] was qualified for the position at issue; and (4) [Plaintiff] was treated less favorably than others not in the protected class." *Brown v. McDonough*, CIV-21-763-G, 2022 WL 4773569, at *3 (W.D. Okla. Sept. 30, 2022).

In asserting her age discrimination claim, Plaintiff relies solely upon the following allegation: "Furthermore, it's noteworthy that all four Paycom employees involved in my hiring process are under the age of 40, which contrasts with my age being over 40." Doc. No. 1-1, at ¶ 15. This allegation, even if accepted as true, is nowhere near sufficient to assert an age discrimination claim. "To survive defendant's motion to dismiss[,] [P]laintiff must do more than conclude [s]he has been discriminated against because [s]he is a member of the protected class." *Williams v. Defender Servs., Inc.*, CIV-10-209-M, 2011 WL 489791, at *4 (W.D. Okla. Feb. 7, 2011).

In *Brown v. McDonough,* the Court dismissed a plaintiff's ADEA claim where he asserted similar minimal facts to those asserted by Plaintiff in this instance:

> Plaintiff's sole age-related allegation is the fact that he was born in 1968. The Complaint thus provides "nothing other than sheer speculation to link" any adverse employment action "to a discriminatory ... motive." There are no allegations of age-related discriminatory comments, overt discriminatory conduct, or preferential treatment toward any younger similarly situated employee. Therefore, even assuming the claim is otherwise adequately pleaded, Plaintiff cannot plausibly establish that he "was treated less favorably" "because of" his age or that "age was the factor that made a difference" in the treatment of Plaintiff.

*Id.* at *3 (internal citations omitted).

Notably, the age of the individuals identified by Plaintiff in her sole allegation related to age discrimination cannot defeat Defendant's Motion. Nowhere has Plaintiff

9

alleged (nor could she allege) that these individuals were "similarly situated," as may be used to establish the fourth element of her *prima facie* case. *See, e.g., Aramburu v. Boeing, Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."). And even if the Court interprets Plaintiff's allegation regarding the ages of the identified individuals as also alleging that each such individual was involved in the decision to rescind her conditional offer—a fact she has not, and cannot, allege—such allegation does not establish age discrimination. *See, e.g., Mitchell v. Nat'l R.R. Passenger Corp.*, 407 F.Supp.2d 213, 238 (D.C.C. 2005) (finding no evidence of age discrimination where the plaintiff, among other things, claimed "the decisionmakers . . . were 13 to 27 years younger than she was at the time [the defendant] terminated her employment").

For these reasons, the Court should grant Paycom's Motion and dismiss Plaintiff's ADEA claim with prejudice.

### III.    **Plaintiff failed to plead any connection between alleged protected activity and Paycom rescinding her conditional job offer.**

Because Plaintiff's Complaint fails to include any factual allegations to support certain elements of her *prima facie* case of retaliation, the Court must dismiss Plaintiff's retaliation claim. In evaluating the sufficiency of Plaintiff's retaliation claim, the Court may look at the elements of her *prima facie* case of retaliation to determine whether Plaintiff sufficiently pled such claim. *Khalik,* 671 F.3d at 1192. For a retaliation claim, those elements include the following: "(1) that [Plaintiff] engaged in protected opposition

to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (citations omitted).

Plaintiff's Complaint contains no factual allegations that a causal connection existed between any protected activity and Paycom's rescission of Plaintiff's conditional offer. The Tenth Circuit has clarified that "protected activities [for retaliation claims] fall into two distinct categories: participation or opposition." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008). "The participation clause provides that an employer may not retaliate against an employee because the employee has . . . participated in any manner in an investigation, proceeding, or hearing under Title VII." *Vaughn*, 537 F.3d at 1151 (internal quotation marks omitted). On the other hand, the "opposition clause . . . provides that an employer may not retaliate against an employee because he has opposed any practice made an unlawful employment practice by Title VII." *Id.* (internal quotation marks omitted). Whether Plaintiff engaged in protected activity "is a question of law because it relies on an interpretation of Title VII." *Payne v. WS Servs., LLC,* 216 F. Supp. 3d 1304, 1315 (W.D. Okla. Oct. 25, 2016).

Although Plaintiff alleges that she filed an EEOC Charge—an action that constitutes protected activity under Title VII—she expressly alleges that she filed her Charge <u>one day after</u> receiving an email from Cataline Keo ("Keo"), Paycom's Senior HR Pre-Employment Specialist, rescinding the job offer. Doc. No. 1-1, at ¶¶ 8-9; *see also* Doc. No. 1-1, Ex. A.3 (providing Plaintiff's created timeline). Therefore, Plaintiff's filing of her EEOC Charge,

even if constituting protected activity under Title VII, could not have formed the basis for Paycom's rescission of her conditional offer. *Payne,* 216 F.Supp.3d at 1316 ("[A] retaliatory action against an employee cannot be *because* of that employee's protected opposition unless <u>the employer knows the employee engaged in protected opposition</u>.") (internal citations and quotation marks omitted).

The only other allegation in Plaintiff's Complaint that she may rely upon to show protected activity <u>that occurred prior to the rescission of her conditional offer</u> relates to an email sent on September 1, 2023, to Keo. In that email, Plaintiff stated as follows:

> One of my references reached out to you and said she has not heard back after leaving messages. Another one shared some concerns about the conversation she had. I have some questions. Will you please have the Manager in your department contact me….

Doc. No. 1-1, at ¶ 7; Doc. No. 1-1, Ex. C.1.

Plaintiff's email to Keo on September 1, 2023, cannot constitute protected opposition to discrimination as a matter of law. "To qualify as protected opposition, the employee <u>must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]</u>." *Haworth v. Tronox, LLC*, CIV-22-00606-PRW, 2023 WL 6276711, at *5 (W.D. Okla. Sept. 26, 2023) (emph. added). "[T]hough no magic words are required, the employee must convey to the employer his or her concern that <u>the employer has engaged in an unlawful practice</u> in order for the conduct to qualify as opposition activity." *Payne,* 216 F.Supp.3d at 1315 (emph. added). Plaintiff's email to Keo on September 1, 2023, never mentions any alleged harassment, discrimination, or retaliation based on any protected characteristic under Title VII; rather, the email vaguely

addresses the reference's "concerns about the conversation she had" with Keo, and notes that Plaintiff has "questions" for a manager in Keo's department. Doc. No. 1-1, Ex. C.1.

Courts have rejected attempts to establish retaliation claims based on the vague allegations at issue in this lawsuit. For example, in *Conner v. Okla.*, the defendant employer argued that the court should dismiss the plaintiff's retaliation claim where "the Amended Complaint fail[ed] to identify the substance of either [the alleged harasser's 'inappropriate remarks'] or Plaintiff's complaints regarding those remarks." 2023 WL 6380018, at *5. The defendant asserted that, in failing to include those factual allegations, "the pleading [did] not show that [the] plaintiff 'had both a subjective good faith and objectively reasonable belief' that the conduct she opposed violated Title VII[.]" *Id.*

The *Conner* court agreed with the defendant:

> Here, the Amended Complaint's broad references to "inappropriate remarks" and "sexual harassment of other employees" provide no meaningful information about the factual circumstances of the allegedly unlawful conduct. Am. Compl. ¶¶ 16, 21. Therefore, even assuming Plaintiff's good-faith belief that Mr. Davis' conduct was unlawful, Plaintiff's factual allegations are insufficient to allow a plausible inference that Plaintiff's belief was "objectively reasonable." *Reznik*, 18 F.4th at 1260; *see also Culp v. Reynolds*, No. CIV-19-424-PRW, 2020 WL 1663523, at *4 (W.D. Okla. Apr. 3, 2020) (dismissing Title VII retaliation claim where plaintiff's "vague and conclusory allegations" failed to "provide insight into how [the coworker's] alleged harassment was based on gender or sex"); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII ... does not set forth a general civility code for the American workplace." (internal quotation marks omitted)). This claim must be dismissed.

*Id.* at *5. The Court should likewise find that Plaintiff's vague references to "concerns" and "questions" do not show that Plaintiff was opposing activity made unlawful under Title VII, much less that a causal connection existed between Plaintiff's vague references in the

September 1, 2023 email and Paycom's rescission of her conditional offer. *See also Green v. Crest Discount Foods, Inc.*, CIV-19-00724-PRW, 2020 WL 5920270, at *3 (W.D. Okla. Oct. 6, 2020).

For these reasons, the Court should dismiss Plaintiff's retaliation claim with prejudice.

### IV.    Plaintiff has not alleged that she is disabled, nor that Paycom "regarded [her] as" disabled.

Because Plaintiff has not alleged that she is disabled or that Paycom regarded her as disabled, the Court may dismiss Plaintiff's disability discrimination claim. Where, as here, Plaintiff sets forth no direct evidence of discrimination, the Court may look at the elements of the *prima facie* case of discrimination when determining whether Plaintiff has sufficiently pled her discrimination claim. *Khalik,* 671 F.3d at 1192. To establish a prima facie case of discrimination under the [ADA], a plaintiff must show that "(1) [s]he is disabled as defined under the [ADA]; (2) [s]he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) [s]he was discriminated against because of [her] disability." *Thomas,* 2023 WL 6380002, at *4 (internal quotation marks omitted). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Plaintiff's Complaint is bereft of factual allegations showing that she is disabled under subsection (A) of 42 U.S.C. § 12102(1). Plaintiff has not alleged any factual support

allowing the Court to find that Plaintiff has "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). In fact, Plaintiff admitted in her Complaint that she had not "disclos[ed] a disability on [her] application[.]" Doc. No. 1-1, at ¶ 14. Plaintiff's admission, along with her failure to include any other factual allegations that she was disabled, show that she has not established the first element of her *prima facie* case by relying upon an actual disability. Plaintiff's Complaint likewise does not include any allegations that she disclosed such disability to Paycom, which shows that the recission of Plaintiff's conditional offer could not have occurred "because of" any alleged disability Plaintiff may have. *See Dees v. Dobson Tech.*, CIV-19-0915-F, 2021 WL 27476, at *4-5 (W.D. Okla. Jan. 4, 2021) (granting summary judgment to defendant on ADA claim where the defendant showed it did not know of employee's disability when it terminated his employment).

Plaintiff must therefore rely upon 42 U.S.C. § 12102(1)(C)—that Paycom "regarded [her] as having such an impairment"—to survive Defendant's Motion. Plaintiff "meets the requirement of being 'regarded as having [a qualifying] impairment' if [she] establishes that . . . she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Thomas,* 2023 WL 6380002, at *4 (quoting 42 U.S.C. § 12102(3)(A)). "[A] plaintiff alleging a 'regarded as' discrimination claim must show that '(1) [s]he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the

impairment at the time of the alleged discriminatory action.'" *Id.* (quoting *Adair v. City of Muskogee,* 823 F.3d 1297, 1306 (10th Cir. 2016)).

Rather than alleging that Paycom perceived her as having a disability, Plaintiff relies upon alleged questions asked to Plaintiff's reference that Plaintiff perceives as being related to a disability. Doc. No. 1-1, at ¶¶ 10, 14, 15, 23. Even if the Court accepts Plaintiff's allegations regarding these questions as true, Plaintiff has not sufficiently pled factual allegations to support a "regarded as" claim for two reasons: (1) Plaintiff never alleges a physical or mental impairment that substantially limits one or more of her major life activities; and (2) the alleged questions asked to Plaintiff's reference amount to nothing more than speculation regarding a potential impairment.

With respect to the first reason that Plaintiff's "regarded as" disability claim fails, the decision in *Williams v. Defender Servs., Inc.*, IV-10-209-M, 2011 WL 489791, at *2-3 (W.D. Okla. Feb. 7, 2011) is instructive. Dealing with a motion to dismiss a "regarded as" disability claim, the *Williams* court reiterated that, "to survive defendant's motion to dismiss, plaintiff must present sufficient factual support for his conclusory allegation that he had or defendant mistakenly believed he had a physical impairment that substantially limits one or more major life activities." *Id.* at *2. Because the plaintiff's complaint, among other things, "fail[ed] to allege a physical or mental impairment that substantially limit[ed] one or more of his major life activities," the court granted the defendant's motion to dismiss. *Id.* Plaintiff's Complaint in this lawsuit contains the same deficiency—she has no facts that anyone at Paycom believed she had a physical impairment that substantially limits one or more major life activities—and therefore should result in the same outcome.

Indeed, even assuming Paycom asked a reference a question about Plaintiff being anxious or having anxiety, that is not enough, as a matter of law, to establish Plaintiff was disabled or regarded as disabled. *See Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016), *aff'd*, 687 F. App'x 748 (10th Cir. 2017) ("Depression, anxiety, and ADHD are not *per se* disabilities") (emphasis original). Employees can often have anxiety or be anxious, especially under stressful working conditions, without having a clinical diagnosis, impairment, or it substantially limiting their lives.

With respect to the second reason that Plaintiff's "regarded as" disability claim fails, the Court need look no further than the decision in *Thomas v. Wal-Mart Assocs*. In *Thomas*, the Court addressed whether the plaintiff sufficiently alleged facts to support a "regarded as" disability claim under the ADA where she relied upon alleged "frequent comments" her supervisor made regarding the "[p]laintiff's age and her risk of being diagnosed with the type of dementia from which her mother suffered." *Id.*

The Court disagreed with the plaintiff that these comments supported her "regarded as" disability claim and granted the defendant's motion to dismiss:

> For the purpose of evaluating Plaintiff's "regarded as" ADA claim at this stage, the Court accepts that dementia qualifies as an impairment under the ADA. Even so, <u>neither of the facts alleged—that McMurtrey stated he believed Plaintiff may be at an increased risk of developing an impairment and that McMurtrey speculated that Plaintiff may have an impairment— amount to McMurtrey perceiving Plaintiff as actually suffering from an impairment.</u> Consequently, Plaintiff has not plausibly alleged that she was "regarded as" being disabled under 42 U.S.C. § 12102(1)(C), or that she was discriminated against "on the basis of" her perceived disability in contravention of 42 U.S.C. § 12112(a).

*Id.* (internal citations omitted and emphasis added); *see also Betchan v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, No. CIV-20-128-G, 2020 WL 7033989, at *3 (W.D. Okla. Nov. 30, 2020). The alleged questions upon which Plaintiff relies to assert her ADA claim in this lawsuit are even more speculative and further removed than those addressed in *Thomas*, showing that Plaintiff has failed to allege facts showing that Paycom "perceiv[ed] Plaintiff as actually suffering from an impairment." *Thomas*, 2023 WL 6380002, at *4.

For these reasons, the Court should grant Defendant's Motion and dismiss Plaintiff's disability discrimination claim with prejudice.

## V.      Paycom complied with the Fair Credit Reporting Act.

Plaintiff bases her FCRA claim(s) on her omission and misrepresentation of the facts regarding her communications with Paycom and its reason for rescinding her conditional offer. Plaintiff's allegations regarding Paycom's FCRA violations can be summarized as follows: (1) Plaintiff believes her "credit report and background report were pulled … without a signed stand-alone consent form, raising questions about the proper authorization process" (Doc. No. 1-1, at ¶ 5); and (2) Plaintiff believes that Paycom rescinded her conditional offer because of something found in her consumer reports, thereby triggering the adverse action process (Doc. No. 1-1, at ¶¶ 8, 12, 17). Plaintiff has not, nor could she, factually support either of these arguments.

First, Paycom did provide Plaintiff with the requisite, stand-alone disclosure required by FCRA prior to pulling her consumer reports. Under 15 U.S.C. § 1681b(b)(2)(A),

a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

A brief review of the "Authorization Form" signed by Plaintiff on August 25, 2023, disproves her allegations that she never received a "stand-alone consent form … authorizing [her] to sign and approve a background and credit check[.]" Doc. No. 1-1, at ¶ 5; Ex. 1. The Authorization Form contains stand-alone disclosures regarding "consumer reports" and "investigative consumer reports," and also contains a "Summary of [Her] Rights Under the Fair Credit Reporting Act" and "Additional State Law Notices." Ex. 1. Plaintiff executed this Authorization Form on August 25, 2023 (i.e., prior to Paycom pulling the reports), meaning she agreed that she received, read, and understood the disclosures. *Id.* at 7 (showing Plaintiff's signature). The Court may therefore ignore all of Plaintiff's allegations that Paycom did not comply with FCRA's requirements under 15 U.S.C. § 1681b(b)(2)(A).

Second, Plaintiff's remaining allegations related to Paycom's alleged FCRA violations all address Paycom's obligations if it took an adverse action based on Plaintiff's consumer reports—something that did not occur in this case. Doc. No. 1-1, at ¶ 17. Preliminarily, and contrary to Plaintiff's allegations, Paycom did provide Plaintiff with her

requested background check on three separate occasions: August 29, 2023; September 3, 2023; and September 11, 2023. Doc. No. 1-1, Ex. M, at 42; Doc. No. 1-1, at ¶ 14 (admitting she received a copy of her background report on September 11, 2023). This is despite Plaintiff not having checked the box in the "Additional State Law Notices" on her Authorization Form, which specifically asked her to "check this box if [she] would like to receive a copy of a consumer report if one is obtained by the Company." Ex. 1, at 8.

Nonetheless, Plaintiff fails to allege sufficient factual support for her determination that Paycom engaged in an "adverse action based in whole or in part" on her consumer reports. FCRA requires that, for employers "using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report," the employer "shall provide to the consumer to whom the report relates . . . a copy of the report[] and a description in writing of the rights of the consumer" under FCRA. 15 U.S.C. § 1681b(b)(3)(A). FCRA also requires certain disclosure and notification obligations where an adverse action occurs and, "as of the time at which the person procures the report or causes the report to be procured[,] the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer, or other similar means." *Id.* § 1681b(b)(3)(B)-(C). In the context of employment decisions, FCRA defines "adverse action" to include "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681(a)(k)(1)(B)(ii).

Paycom did not take any adverse action against Plaintiff because of her consumer reports; rather, Paycom rescinded her conditional offer based on her combative,

disrespectful, and belligerent behavior when interacting with Paycom employees after receipt of the conditional offer. Doc. No. 1-1, Ex. M, at 42. Plaintiff relies upon the email she received from Keo on September 5, 2023, as support for her allegation regarding why she believes Paycom rescinded her offer. Doc. No. 1-1, at ¶ 8. But that email does not state that Paycom rescinded the offer "based in whole or in part" on her consumer reports; rather, it states that due to "discovered information during [Paycom's] background check <u>process</u> that does not meet Paycom's hiring standards," Paycom was "unable to remove the contingencies or continue with [the] offer of employment." Doc. No. 1-1, at Ex. C. 3. The email further states that, during "[Paycom's] hiring process file review, [Paycom] look[s] at <u>all publicly available information, the background report provided to us, and references</u>." *Id.* In other words, there was nothing negative in the background report itself to be disclosed, rather it was Plaintiff's own apparent combative behavior while going through the process that resulted in the recession.

Plaintiff's continued correspondence with Paycom employees after Paycom rescinded her conditional offer further shows that Paycom did not take any adverse action "based in whole or in part" on Plaintiff's consumer reports. On September 6, 2023, Tiffany Gamblin ("Gamblin"), Paycom's Director of Human Resources, Business Services, responded to one of Plaintiff's numerous emails about the recission of her conditional offer. Doc. No. 1-1, Ex. E.2, at 2. In that email, Gamblin stated as follows:

> I understand that this decision [about the offer] is disappointing, however, I can confirm that we have followed our internal processes regarding the review of your application and background information. We are consistent in our decisions when we are unable to move a candidate forward.

> During our review, <u>we evaluate all available information discovered during our post-offer process, including background check, public records, references etc.</u> We are unable to reconsider our decision at this time.

*Id.* Gamblin's description of Paycom's process shows that Paycom is not solely reviewing consumer reports during the "post-offer process," and that nowhere did Paycom state (or imply) that it made its decision to rescind her offer "based in whole or in part" on her consumer reports.

Plaintiff's own allegations in her Complaint confirm this point. After admitting that she did receive a copy of her requested background report on September 11, 2023, Plaintiff thereafter stated that "the report did not contain any negative information." Doc. No. 1-1, at ¶ 13. Paycom reaffirmed this point in its EEOC Position Statement. Doc. No. 1-1, Ex. M, at 42, n. 2 ("[T]here was nothing in the background report that was concerning – thus nothing to trigger an FCRA recession process."). Plaintiff's admission that her background check contained no negative information begs the question of whether her FCRA claim, which relies heavily upon the statute's adverse action provisions, has any merit.

Because Paycom complied with all applicable FCRA provisions, the Court should grant Defendant's Motion and dismiss Plaintiff's FCRA claim with prejudice.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant's Motion should be granted, and Plaintiff's claims dismissed with prejudice.

Respectfully submitted,

*s/ Alyssa N. Lankford*

Philip R. Bruce, OBA #30504
Alyssa N. Lankford, OBA #33944
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
Eighth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439
philip.bruce@mcafeetaft.com
alyssa.lankford@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

I hereby certify that on April 2, 2024, I emailed the attached document to:

carolyn.a.mckeown@gmail.com

**PLAINTIFF, PRO SE**

*s/Alyssa N. Lankford*
Alyssa N. Lankford